IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WATERSHED ASSET MANAGEMENT, L.L.C., a California limited liability company,

    Plaintiff,

  v.

WATERSHED CAPITAL, LLC, a Tennessee limited liability company,

    Defendant.

AND RELATED COUNTERCLAIM.

No. C 13-03852 WHA

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS AND VACATING HEARING**

## INTRODUCTION

In this trademark infringement action, an asset management firm moves to dismiss counterclaims asserted by a consulting firm in its answer. For the reasons stated below, the motion is **GRANTED**. The hearing on February 27 is **VACATED**.

## STATEMENT

Defendant Watershed Capital, LLC is a consulting firm that advises companies and fund managers that advance a sustainable economy. Latham & Watkins LLP is a law firm and is counsel for plaintiff Watershed Asset Management, LLC in this action. In 2011, Latham hosted and sponsored a cleantech event for defendant in its San Francisco office. Defendant, in turn, listed Latham as the top law firm for cleantech. These cross-promotional activities included referring potential clients to each other and defendant believed it was authorized to use Latham's logo for those efforts (Ans. 9, ¶¶ 8–15).

1    In August 2013, plaintiff, represented by Latham, filed this action alleging trademark infringement of the "Watershed" mark. Soon after commencement of this action, Latham ordered defendant to remove its mark from defendant's website (*id.* ¶ 16).

In its answer, defendant asserted four counterclaims: (1) tortious interference with contractual relations; (2) tortious interference with prospective economic advantage; (3) unfair competition under California Business and Professional Code Section 17200; and (4) cancellation of federal trademark registration (Dkt. No. 12). Plaintiff now moves to dismiss all counterclaims.

## ANALYSIS

A motion to dismiss under Rule 12(b)(6) is proper only "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). As a general rule, courts may not consider material outside the complaint when ruling on a motion to dismiss; however, a non-appended document may be incorporated by reference if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### 1.  EXTRINSIC EVIDENCE.

In opposition to the Rule 12(b)(6) motion, defendant submits four exhibits. Exhibit A is an e-mail exchange between Latham and defendant wherein Latham attached its logo. Exhibit B is an online profile of Michele Kyrouz, who was a partner at Latham prior to her current role as general counsel for plaintiff, and identifies her employment periods. Exhibit C is a web page from plaintiff's website showing biographies of its staff, including that of Ms. Kyrouz. Exhibit D is an e-mail from Latham, dated August 22, 2013, that requested defendant to immediately remove Latham's logo from defendant's website and to refrain from any future use. Plaintiff contends that these exhibits go against the well-established prohibition against raising extrinsic evidence on a Rule 12(b)(6) motion.

2

Under *Ritchie*, these exhibits may be incorporated by reference if defendant's answer and counterclaims referred extensively to them or they form the basis of defendant's counterclaims. Defendant's answer, however, does not do so. At best, defendant implicitly, but not expressly, relies upon Exhibits A and D when it claims it "understood that it was authorized by [Latham] to use the [Latham] name" and Latham "summarily terminated the partnership with [defendant]" after filing this action (Ans. 9-10, ¶¶ 14, 16). Nor do they form the basis of defendant's counterclaims. The underlying basis for the counterclaims is alleged wrongful conduct by *plaintiff*. Extrinsic evidence that shows a possible relationship between defendant and *Latham* cannot form the basis of defendant's counterclaims as alleged. Exhibits A and D, therefore, are not incorporated by reference for purposes of this motion and this order will not rely on them.

Same for Exhibits B and C. Nowhere in the answer does defendant include any factual allegations that Ms. Kyrouz, as a previous partner at Latham and now general counsel for plaintiff, played a role in the alleged interference underlying defendant's counterclaims. The answer only alleges that plaintiff and "its agents and/or representatives knew of the existence of the agreement between [Latham] and [defendant]" (Ans. 10, ¶ 21). This is a bare assertion, and insufficient. Defendant has failed to demonstrate that Exhibits A through D have been incorporated by reference, and may not rely on them in surviving the instant motion to dismiss.

**2.    TORTIOUS INTERFERENCE OF CONTRACTUAL RELATIONS.**

Defendant, in its opposition, alleges it had a valid contract with Latham, and that plaintiff interfered with this contractual relationship by retaining Latham as counsel to initiate this action. Of relevance is paragraph 18 of defendant's answer and counterclaims because it is the only factual allegation attributed to plaintiff. Paragraph 18 states, "[plaintiff's] actions have resulted in [defendant's] loss of its mutually beneficial relationship with [Latham] and continue to strain [defendant's] relations with its clients and deprive [it] of referrals from [Latham]" (Ans. 10, ¶ 18). The elements of tortious interference of contractual relations are:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

3

> relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Fatal to defendant's tortious interference of contractual relations counterclaim is the lack of any facts supporting the existence of intentional acts by plaintiff "designed to induce a breach or disruption of the contractual relationship." *Ibid*. Though defendant lays out factual allegations that allude to a possible relationship between it and Latham, nowhere in the answer and counterclaims does defendant plead facts to suggest plaintiff took intentional actions to interfere and disrupt this possible relationship (Ans. 9, ¶¶ 8–15). To the contrary, defendant's allegation that Latham severed ties with it "for the chance to represent a billion-dollar hedge fund" suggests no conduct taken by plaintiff meant to interfere or disrupt (Ans. 10, ¶ 17). The only factual allegation that attributes any role to plaintiff is in paragraph 18 of the answer and counterclaims where defendant alleges "actions" taken by plaintiff that resulted in defendant's "loss." Such conclusory allegations devoid of any factual support cannot survive a Rule 12(b)(6) motion.

Defendant also raises — in its opposition but not in the answer — the possibility of an attorney-client relationship with Latham (Opp. 7). Defendant uses this contention to bolster its counterclaims against plaintiff and to impute certain duties on Latham (*ibid.*). An opposition to a Rule 12(b)(6) motion is not the appropriate way to introduce new allegations, and therefore, any reliance on a possible attorney-client relationship cannot save defendant from dismissal of this claim. Accordingly, defendant's tortious interference of contractual relations counterclaim is dismissed.

**3.    TORTIOUS INTERFERENCE OF PROSPECTIVE ECONOMIC ADVANTAGE.**

Defendant also asserts a tortious interference of prospective economic advantage counterclaim. The elements are:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

4

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003). In addition, the California Supreme Court held that a "plaintiff must plead that the defendant engaged in an independently wrongful act." *Id*. at 1158.

Defendant's claim for tortious interference of prospective economic advantage fails for the same reason as the preceding claim. Defendant simply did not plead enough factual allegations to support an inference that plaintiff intentionally interfered and disrupted its alleged relationship with Latham. Moreover, a tortious interference of prospective economic advantage claim further requires an "independently wrongful act" other than the act of interference itself. Defendant devoted a single sentence alleging plaintiff's "actions," but nowhere in the answer are these "actions" supported by facts. Such conclusory allegations cannot survive a Rule 12(b)(6) motion. Accordingly, defendant's tortious interference of prospective economic advantage counterclaim is dismissed.

### 4. UNFAIR COMPETITION UNDER CALIFORNIA LAW.

Section 17200 of California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (1992). Our court of appeals has held that the heightened pleading standards of Rule 9(b) apply to claims grounded under the fraudulent prong of the UCL. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Unfair business acts or practices under the UCL include "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . . or otherwise significantly threatens or harms competition." *Cel-Tech Comm., Inc. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999).

Defendant contends that engaging Latham "as counsel can be characterized as an unfair business practice" (Opp. 10). It further asserts that plaintiff used its "superior economic capacity" to lure Latham away, harming "defendant's business prospects and leaving [defendant] without its business partner and advisor in [Latham]" (*ibid.*). The fact that defendant is "involved in a business sector designed to improve the public welfare only

5

buttresses its claim of unfair competition" and that the "commingling of [] personnel raises suspicions of potentially improper practices" (*ibid.*).

Defendant raises these contentions for the first time in the opposition — not in the answer. Nothing in the answer raises an inference that plaintiff took unlawful, unfair, or fraudulent conduct that would be actionable under the UCL. Furthermore, defendant's conclusory allegation that plaintiff's "actions" resulted in defendant's loss without any factual support fails to meet the heightened pleading standard required under the fraudulent prong of the UCL.

As to defendant alleging unfair conduct under the UCL, there is nothing in defendant's answer to suggest that plaintiff violated antitrust laws or the policy or spirit of those laws. Moreover, it is well-established that antitrust laws are meant to protect competition, not competitors. Defendant's alleged deprivation of business prospects and that by virtue of it being "involved in a business sector designed to improve the public welfare" does not "buttress[] its claim of unfair competition" because it is alleging a harm to itself, not competition.

Defendant's UCL counterclaim under the unlawful prong fails too. Defendant contends that plaintiff interfered with defendant's contractual relationship with Latham by initiating suit against defendant and retaining Latham as counsel (Opp. 10). Again, this was raised for the first time in the opposition. Moreover, defendant has not alleged any factual allegations in its answer and counterclaims that demonstrate unlawful conduct by plaintiff. Defendant, therefore, has failed to plead sufficient factual allegations to support its UCL counterclaim under all three prongs, and the counterclaim is dismissed

5. **CANCELLATION OF FEDERAL TRADEMARK REGISTRATION.**

In its opposition, defendant withdraws its counterclaim for cancellation of plaintiff's federal trademark (Opp. 11). Plaintiff, in its reply, stated that an "order dismissing the claim with prejudice is appropriate" because defendant did "not respond to any of the points supporting dismissal" (Reply 10). This order declines to dismiss with prejudice defendant's cancellation claim because plaintiff has voluntarily withdrawn it.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss counterclaims is **GRANTED**. Defendant has until **NOON ON APRIL 30** to file a motion, noticed on the normal 35-day track, for leave to file an amended answer. Defendant must append to its motion a proposed amended answer. The motion should clearly explain how the amendments to the answer cure the defects identified herein. Moreover, the hearing on February 27 is **VACATED**.

**IT IS SO ORDERED.**

Dated: February 25, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE